UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

CORPORATE RESOURCES
SERVICES, INC., *et al.*,

                      Debtors.

STAFF MANAGEMENT
SOLUTIONS, LLC and
PEOPLESCOUT MSP, LLC,

                      Appellants,

-*against*-

JAMES FELTMAN, *Chapter 11 Trustee of the Estate of Debtors Corporate Resource Services, Inc., et al.*, WELLS FARGO BANK, N.A., NOOR STAFFING GROUP, LLC, and NOOR ASSOCIATES, INC.,

                      Appellees.

**OPINION & ORDER**

19 Civ. 10931 (ER)

R<small>AMOS</small>, D.J.:

       Before the Court is Staff Management Solutions, LLC and PeopleScout MSP LLC's (together "Staff Management") appeal from an October 10, 2019 Opinion and Order by the United States Bankruptcy Court for Southern District of New York (the "Bankruptcy Order"), denying their motion to enforce a settlement agreement entered into by chapter 11 trustee, James Feltman (the "Trustee") of Debtor Corporate Resource Development, Inc. ("CRD"), and Noor Staffing Group, LLC and Noor Associates, Inc., (together, "Noor") on June 2, 2017 (the "Settlement Agreement"). Doc. 1. For the following reasons, Staff Management's appeal is dismissed, and the Bankruptcy Court's decision is AFFIRMED.

I.  BACKGROUND

Staff Management provides temporary staffing and management services.  Doc. 7, Ex. 12 ¶ 13.  In order to provide these services, it subcontracts with other staffing providers.  *Id.* ¶¶ 2–3, 13–14.  Staff Management entered into a written Supplier Non-Exclusive Master Service Agreement with CRD, one such staffing provider, effective January 10, 2015 (the "CRD Contract").  Doc. 7, Ex. 18 at 2–3.  Pursuant to this contract, CRD would supply temporary staff to Staff Management's client, and Staff Management would process and forward payments from that client to CRD.  *Id.*  CRD provided Staff Management with written authorization to make these payments by electronic transfer to an account at Wells Fargo (the "Wells Fargo Account).  *Id.* at 3.  According to the CRD Contract, Staff Management was to "act as paying agent [to CRD]."  Doc. 7, Ex. 8 at 27.  Staff Management thereafter made payments to the Wells Fargo Account.  Doc. 7, Ex. 18 at 3.

On February 26, 2015, CRD entered into an Asset Purchase Agreement to sell its business to Noor.  *Id.* at 3.  Staff Management then entered into a new Supplier Non-Exclusive Master Agreement with Noor, effective March 21, 2015 (the "Noor Contract"). *Id.*  Pursuant to this contract, Noor supplied temporary staff to Staff Management's client, and Staff Management processed and forwarded payments from that client to Noor.  *Id.* From May 11, 2015 to January 27, 2016, Staff Management sent these payments to the Wells Fargo Account designated in its contract with CRD.  *Id.*

On July 23, 2015, CRD and other related debtors filed Chapter 11 bankruptcy petitions, which were jointly administered as *In Re:  Corporate Resource Services, Inc. et al.*, No. 15–12329 (MG) United States Bankruptcy Court, Southern District of New York. *Id.*  On March 4, 2016, the Trustee commenced an adversary proceeding against Noor seeking to recover assets fraudulently transferred from CRD without appropriate consideration and, among other relief, a declaratory judgment that funds held by Wells

2

Fargo were the property of the estate, as both the Trustee and Noor made claims to these funds. *Id*. Staff Management did not participate in those proceedings. *Id*.

Eventually, Noor and the Trustee entered into a Settlement Agreement, which was approved on July 14, 2017. *Id.* at 4. As is relevant to this litigation, the Settlement Agreement contained the following language:

> WHEREAS, historically, Wells Fargo Bank, N.A. ("Wells Fargo") generally received collections on incoming receivables for all of the Debtors, including CRD, and held those funds in designated Wells Fargo accounts;
>
> * * *
>
> WHEREAS, thereafter, Wells Fargo collected and held monies on behalf of certain receivables that both Trustee and Noor claim an interest in (the "CRD-Noor OAP"), which amount is currently estimated at $1.241 million;
>
> * * *
>
> WHEREAS, Noor asserts that approximately $1.2 million in cash has been improperly transferred to the Trustee since entry of the Wells Fargo Stipulation and belongs to Noor, which the Trustee disputes;
>
> * * *
>
> WHEREAS, on March 4, 2016, the Trustee, on behalf of the Debtors, filed adversary proceeding number 16-01037 (MG) (the "Adversary Proceeding") against Noor seeking, among other things: . . . (iv) a declaratory judgment that certain funds held at, or distributed by Wells Fargo, are property of the estate pursuant to section 541 of Bankruptcy Code;
>
> * * *
>
> WHEREAS, the Parties wish to finally and fully settle all claims and disputes arising from or in connection with the Adversary Proceeding, the Claim, and the Appeal in order to avoid the risk, uncertainty, and costs of prolonged litigation;
>
> * * *
>
> NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, subject to approval of this Settlement Agreement by the Court, and upon the consent and agreement between the Trustee and Defendants, it is hereby agreed:
>
> a. [Noor] release[s] any claims to money that [Noor] allege[s] the Trustee has received from Wells Fargo (the "Wells Fargo

> Amounts"), the amount and ownership of which is subject to a dispute between the Trustee and [Noor], and
>
> b. [Noor] release[s] any claims to the entirety of the CRD-Noor OAP held by Wells Fargo, the ownership of which is disputed, and which Wells Fargo has confirmed is $1,241,806.79 as of April 26, 2017, to the Trustee.
>
> * * *
>
> e. There will be no reconciliation of the CRD-Noor OAP, the Wells Fargo Amounts, or any other amounts related thereto.
>
> * * *
>
> 10. . . [Noor] on behalf of themselves, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge the Trustee, the Debtors, their estates, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, members, associates, partners, subsidiaries, predecessors, successors, employees, attorneys, and agents from any and all of [Noor's] claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise relate to the transactions referenced in the Adversary Proceeding or the Claim or result from any act or omission with respect to the Adversary Proceeding or the Claim to the extent permitted by law.

Doc. 7, Ex. 6 at 4–15. The Bankruptcy Court retained jurisdiction to hear and determine "any and all matters arising from the interpretation and/or implementation" of the Settlement Agreement. Doc. 7, Ex. 7 at 3.

On January 25, 2019, Noor filed a complaint in the United States District Court for the Northern District of Illinois seeking to recover the funds that Staff Management sent to the Wells Fargo account. *See Noor Staffing Grp., LLC d/b/a J.D. & Tuttle Hospitality Staffing v. Staff Mgmt. Sols. LLC*, No. 19 Civ. 529 (N.D. Ill.). In that lawsuit, Staff Management maintains that Noor's claims have been released by the Settlement Agreement. Doc. 7, Ex. 18 at 5. On July 15, 2019, Noor filed a motion seeking to transfer the case to the United States District Court for the Southern District of New York, so that it might be referred to the Bankruptcy Court. *Id.*

On August 20, 2019, Staff Management also filed a motion to enforce the settlement agreement with the Bankruptcy Court, arguing that the Settlement Agreement

4

released it from any liability it may have had with regards to transferring funds to the Wells Fargo account, and, incidentally, from any liability in the Illinois action. Doc. 7, Ex. 5. The Trustee, Wells Fargo, and Noor filed responses, and Staff Management filed a Reply. Doc. 7, Exs. 13–16. Judge Glenn, who oversaw the bankruptcy proceedings, held a hearing on the motion, Doc. 7, Ex. 17, and ultimately denied the motion on October 10, 2019, Doc. 7, Ex. 18. In doing so, Judge Glenn found that, as a threshold matter, Staff Management did not have prudential standing to enforce the Settlement Agreement because it was neither an "agent" nor an "associate" of CRD for purposes of the Settlement Agreement. *Id.* at 15. Even if it did, Judge Glenn found that its motion should be denied because the Settlement Agreement did not extend to Staff Management, and rejected its remaining arguments. *Id.* at 15–16.

The day after the Bankruptcy Court entered its Order, on October 11, 2019, Staff Management commenced an adversary proceeding against the Trustee, Noor, and Wells Fargo in that court. *See* Doc. 15 ¶¶ 2–3. In that proceeding, Staff Management seeks to obtain funds from the Trustee to be used to pay any judgment that might be entered against it and in Noor's favor in Illinois.[1]

Staff Management filed the instant appeal on November 26, 2019, arguing that it does have standing to enforce the Settlement Agreement and that the Settlement Agreement releases Noor's claims against it. Doc. 1. It submitted its briefing on April 20, 2020, Doc. 14, and the Trustee and Noor filed briefs in response. Docs. 15–16.

## II. LEGAL STANDARD

### A. Bankruptcy Proceedings

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts

---

[1] Wells Fargo, the Trustee, and Noor moved to dismiss the proceeding, and on May 6, 2020 the Bankruptcy Court dismissed the proceeding as against Wells Fargo, and stayed the proceeding as against the Trustee and Noor pending the resolution of the Illinois lawsuit. *See* Doc. 15 ¶¶ 3–4.

of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). A district court generally reviews the findings of fact of a bankruptcy court under a "clearly erroneous" standard, but conclusions of law are reviewed *de novo*. *See In re Emmerling*, 223 B.R. 860, 863 (2d Cir. 1997); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988–89 (2d Cir. 1990); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 423 (S.D.N.Y. 2001).

### B. Prudential Standing

A party invoking federal jurisdiction bears the burden of establishing its standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements; (2) federal court prudential standing requirements; and (3) the "party in interest" requirements under Section 1109(b) of the Bankruptcy Code. *In re Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013). Traditionally, prudential standing has included the "rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of third parties, and the rule barring claims that fall outside the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (internal quotations marks and citations omitted). More recently, in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 (2014), "the Supreme Court . . . defined the zone of interests test as a merits question concerning the definition of the cause of action and not a standing issue." *Mantena v. Johnson*, 809 F.3d 721, 731 n. 10 (2d Cir. 2015) (internal citation omitted).´ Prudential limitations on standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit." *In re Old Carco,* 500 B.R. at 691 (citation omitted).

## III. DISCUSSION

Staff Management maintains that it has standing to enforce the Settlement Agreement for the same reason it releases Noor's claims against it: because Staff Management is a third-party beneficiary. "[T]he terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajaman v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (citations omitted). "In determining third-party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement." *Encore Lake Grove Homeowners Ass'n, Inc. v. Cashin Assocs., P.C.*, 111 A.D.3d 881, 882 (N.Y. App. Div. 2d Dep't 2013) (internal quotation marks and citations omitted). Moreover, "the identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution." *Id.* at 883 (internal quotation marks and citation omitted). However, "[p]roving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (internal quotation marks and citations omitted). As the Bankruptcy Court put it, "a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary of that contract lacks prudential standing to litigate issues related to that contract." Doc. 7, Ex. 18 at 10 (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009), among others).

Staff management argues that it is entitled to third-party beneficiary status for three reasons: (1) Staff Management is an "agent" or "associate" of CRD; (2) pursuant to the Settlement Agreement, Noor released any claims to the money in the Wells Fargo Account; and (3) the Settlement Agreement was intended to be a final resolution of any and all claims.[2] The Court considers, and rejects, each of these arguments in turn.

---

[2] Staff Management also argues that the Settlement Agreement did not contain any express reservation of rights against it, as required by New York General Obligations Law § 15–105. Because Staff Management

7

### A. "Agent" or "Associate" Within the Scope of the Settlement Agreement

Staff Management argues that it is an "agent" or "associate" of CRD by virtue of the CRD contract. "Specifically, Staff Management acted on CRD's behalf by submitting a consolidated invoice to the client for CRD's work, receiving payment from the client, and forwarding those payments from the client to CRD, as required by the CRD contract." Doc. 14 at 10. According to its contract with CRD, Staff Management was to "act as [CRD's] paying agent." Doc. 7, Ex. 8 at 27. This was further evidenced by CRD's authorization of Staff Management to make payments to CRD by electronic transfer to the Wells Fargo Account. Doc. 14 at 10–11. However, Staff Management's status as an agent for purposes of the CRD contract does not unambiguously establish that it was CRD's agent for purposes of the Settlement Agreement. It is well-established that "[o]ne may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose." *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) (internal quotation marks and citation omitted). As such, Staff Management's agency relationship with CRD for purposes of the CRD contract is insufficient to confer it with prudential standing to enforce the Settlement Agreement.

Staff Management also argues that it is an "associate" of CRD with regard to the payments it made pursuant to the CRD contract. It argues that both Black's Law Dictionary and Merriam-Webster Dictionary afford very broad definitions to the term "associate," and that this Court should interpret the term accordingly. In particular, it maintains that "Staff Management was closely 'associated' with CRD in the performance of the CRD contract including forwarding these payments from the client." Doc. 14 at 11. For the same reasons Staff Management was not an "agent" of CRD within the meaning of the Settlement Agreement, it was also not its "associate." "New York law

---

did not raise this argument in the Bankruptcy Court, the Court will not consider it on appeal. See *In re Gordon*, 577 B.R. 38, 46-47 (S.D.N.Y. 2017).

considers the context as a key factor in interpreting a release. Where the release presents a specific context, the released claims are interpreted in this light." *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 71 (Bankr. S.D.N.Y. 2009) (internal quotation marks and citation omitted). "[I]ts meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given." *Clerico v. Pollack*, 148 A.D.3d 769, 771 (N.Y. App. Div. 2d Dep't 2017) (internal quotation marks and citation omitted). Here, the Settlement Agreement was entered into by the Trustee and Noor and released "any claims to money that [Noor] allege[s] the Trustee has received from Wells Fargo . . . , the amount and ownership of which is subject to a dispute between the Trustee and [Noor]." Doc. 7, Ex. 6 at 9. Although the dispute between Noor and the Trustee involve the same Wells Fargo account that CRD deposited money into, the Settlement Agreement is clearly meant only to resolve the dispute between the Trustee and Noor. Staff Management has not shown that it was an "associate" of CRD for these purposes.

### B. Release of All Claims Related to the Wells Fargo Account

Next, Staff Management argues that Noor cannot seek to recover from Staff Management for breach of contract in Illinois because it released any claims to the money in the Wells Fargo account. However, Noor's release of its claims to the funds held in the Wells Fargo account in no way resolves whether it received payment from Staff Management pursuant to a separate contract. Answering this question may well turn on whether Staff Management's deposits into the Wells Fargo account constituted payment for purposes of its contract with Noor and, if it did, what remedies are available to Noor. But these are questions for another day and for another court.

The cases cited by Staff Management in support—*Matter of Walter*, 180 A.D.3d 1201 (N.Y. App. Div. 3d Dep't 2020), *Frenk v. Solomon*, 173 A.D.3d 490, (N.Y. App. Div. 1st Dep't 2019), and *Hennet v. Allen*, 43 Misc. 3d 542 (Sup. Ct. Albany Cty. 2014)—are inapposite. In *Matter of Walter*, the court found that the unambiguous language of the

release concerning the accounting of an individual's estate clearly extended to claims regarding a parcel of land that, though part of the estate, had not been included in the accounting. 180 A.D.3d 1201. Here, however, as discussed above, the claims do not necessarily implicate the same parties and property. Similarly, in *Frenk v. Solomon*, the Court found that the general release and stipulation in the discontinuance of a prior action applied to "all claims of any kind whatsoever," in part because "the 1973 lawsuit sought the return of any and all works of art alleged to have been formerly owned by Westheim." 173 A.D.3d at 490. In contrast, the release at issue in this case applies only to claims that "arise from or otherwise relate to the transactions referenced in the Adversary Proceeding or the Claim or result from any act or omission with respect to the Adversary Proceeding or the Claim to the extent permitted by law." Doc. 7, Ex. 6 at 15. This release in no one way extends, then, to Noor's claims against Staff Management regarding an unrelated contract. Finally, in *Hennet*, which concerned the appropriate ownership of a dog, the court's analysis centered on a finding that "pets should be recognized as a 'special category of property,'" and concluded that the dog was therefore "simply not covered by the release." 43 Misc. 3d at 547. Not only does this rationale not help Staff Management—it is completely besides the point.

### C. Final Resolution of Claims

Finally, Staff management argues that, if it is not released, then the intention of the Settlement Agreement to "finally and forever waive, release and/or discharge the Trustee . . . from any and all of [Noor's] claims, causes of action," and so forth, is unsustainable because the Trustee remains liable to Staff Management. On this point, the Trustee has submitted briefing preserving his rights in the Adversary Proceeding commenced by Staff Management in the Bankruptcy Court against the Trustee, Noor, and Wells Fargo. As the Trustee properly notes, "Staff Management's Motion to Enforce Settlement Agreement did not seek, and the Bankruptcy Court's Order Denying Enforcement did not provide, any relief from the Debtors' estates or the Trustee." Doc.

15 ¶ 1. As such, any question relating to Staff Management's claims against the Trustee are not properly before the Court. As to Staff Management's argument that this possibility entitles it to third-party beneficiary status, the Court notes that the release only applies to claims between the Trustee and Noor. Staff Management's argument, then, is unpersuasive for purposes of this motion.

***

As the Bankruptcy Court correctly found, Staff Management lacks prudential standing to bring the instant motion. Moreover, even if Staff Management were to have standing to enforce the Settlement Agreement, doing so would not afford it the relief it seeks. Even if the Settlement agreement released claims arising out of Staff management's relationship to CRD, it does not release claims arising from Staff Management's relationship to Noor, such as those at issue in Illinois.

### IV. CONCLUSION

For the foregoing reasons, Staff Management's motion is dismissed, and the Bankruptcy Court is affirmed. The Clerk of Court is respectfully directed to terminate all outstanding motions and to close the case.

It is SO ORDERED.

Dated: September 1, 2020
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.